IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

RANDY D. HUBBARD,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

Case No. 6:16-cv-00032-AA
OPINION AND ORDER

AIKEN, Judge:

    Plaintiff Randy Dean Hubbard brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's decision denying his application for disability benefits under Title II ("DIB") of the Act and supplemental security income payments under Title XVI ("SSI") of the Act. For the reasons set forth below, the Commissioner's decision is reversed and remanded for immediate payment of benefits.

## BACKGROUND

    Plaintiff, now over 50 years old, suffered a spinal and traumatic brain injury in September 2003 because of a logging accident at work. Tr. 503. Prior to plaintiff's injury, he worked as a

Page 1 - OPINION AND ORDER

"rigging slinger" and truck driver. Tr. 83, 326. Since his injury, the closest thing plaintiff has had to gainful employment is volunteer work at the Eugene Mission ("the Mission"). Tr. 540, 598, 654. On July 16, 2012, plaintiff applied for DIB and SSI. Tr. 238-245. Originally, he alleged disability beginning in 2003, Tr. 238; he later amended the onset date to 2006, Tr. 66. His application was denied initially and again upon reconsideration. Tr. 163-72, 17. On April 21, 2014, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 62-89. Plaintiff was represented by an attorney and testified. *Id.* On June 16, 2014, the ALJ issued an unfavorable decision. Tr. 42. On November 5, 2015, the Appeals Court denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1. Plaintiff now seeks judicial review.

## STANDARD OF REVIEW

The district court must affirm the ALJ's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's" decision. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner employs a five-step sequential process to determine whether a person is disabled under the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. At step

one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. Tr. 47; 20 C.F.R. §§ 404.1520(b) & 416.920(b). At step two, the ALJ found plaintiff had the following medically severe impairments: traumatic brain injury, cognitive disorder, and C6/7 spinal injury. Tr. 48; 20 C.F.R. §§ 404.1520(c) & 416.920(c). The ALJ acknowledged plaintiff's medically determinable impairments of major depressive disorder, anxiety disorder, and borderline intellectual functioning, but found those impairments nonsevere. Tr. 48. At step three, the ALJ found plaintiff's impairments did not meet or medically equal one of the listed impairments the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 48; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, & 416.926.

The ALJ found plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Tr. 49. The ALJ included some additional physical limitations in the RFC, but none of them are pertinent to this review because plaintiff does not challenge the ALJ's findings regarding physical impairment. Tr. 49. The ALJ included the following mental limitations in the RFC: plaintiff is limited to simple, routine, repetitive tasks; he should perform no transactional skills; no monetary exchange; only occasional decision making and changes in the work setting; and no assembly work. Tr. 49. At step four, based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found plaintiff was not able to perform his past relevant work as a rigging slinger and truck driver. Tr. 54; 20 C.F.R. §§ 404.1520(f) & 416.920(f). At step five, however, the ALJ concluded that plaintiff was capable of making a successful adjustment to other work in the national economy, such as dishwasher and garment presser. Tr. 55; 20 C.F.R. §§ 404.1520(g) & 416.920(g). Accordingly, the ALJ found plaintiff not disabled. Tr. 55.

## DISCUSSION

Plaintiff contends the ALJ committed three significant legal errors in finding him not disabled. First, plaintiff asserts that the ALJ erred by not crediting the opinion of Scott D. Alvord, PsyD. Second, plaintiff argues that the ALJ erred by not giving clear and convincing reasons for

rejecting plaintiff's testimony. Finally, plaintiff maintains that the ALJ did not meet her burden of proof regarding plaintiff's ability to perform other work in the national economy. I start with plaintiff's second allegation because the adverse credibility finding against plaintiff impacted the ALJ's decision not to credit Dr. Alvord, which ultimately determines the outcome of this case.

I.  *Plaintiff's Testimony*

Plaintiff argues that the ALJ did not give legally sufficient reasons for rejecting plaintiff's testimony. Pl.'s Br. 15. An ALJ must provide "clear and convincing" reasons to reject a plaintiff's allegations of disabling symptoms and limitations. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). The ALJ can determine that a plaintiff lacks credibility by identifying contradictions between complaints and self-reported activity and by refuting complaints with medical evidence. *Berry v. Astrue*, 622 F.3d 1228, 1234-35 (9th Cir. 2010). When evidence is open to multiple interpretations, the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). However, plaintiffs should not be "penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Relatedly, "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff alleges that he is disabled and unable to work due to both his physical and mental impairments, specifically neck, shoulder and arm pain, as well as depression and anxiety. Tr. 74-78. Specifically, plaintiff testified that he finds it hard to concentrate during his four-hour shifts at the Mission's intake desk. Tr. 75. As he works, the anxiety builds. Tr. 76. His able to complete four-hour shifts by taking hourly breaks of about ten minutes each. Tr. 76. He cannot work full-time or without frequent breaks because the anxiety "builds up." Tr. 76.

The ALJ found plaintiff's ability to drive, his participation in a vocational rehabilitation program, his work at the Mission, his independence with his daily activities, and his walking and bike riding, were "not consistent" with plaintiff's alleged symptoms. Tr. 52. I find no inconsistency

Page 4 - OPINION AND ORDER

between plaintiff's activities and symptom testimony. Plaintiff should not be penalized for being able to drive on occasion, attempting vocational rehabilitation, or working a few hours per day in exchange for room and board at a homeless shelter and recovery house (where he has stayed clean and sober for three years). Tr. 71. Nor should plaintiff be penalized for maintaining some independence in his daily living, and for occasionally walking or riding his bike. Further, the record shows plaintiff's ability to do each of the above activities is limited. Plaintiff testified he was unable to continue driving as a part of his volunteer work at the Mission, volunteers only four hours per day and cannot work a full day, needs hourly breaks, only goes for short walks, and rests often even during a four-block walk. Tr. 73-76, 78-81. The only one of these limitations the ALJ addressed was the limited nature of plaintiff's work at the Mission, by pointing out that when plaintiff first started volunteering there he worked as a driver and did longer shifts than he currently works. Tr. 52. However, plaintiff explained how his limitations rendered him unable to continue driving and unable to continue working longer shifts. Tr. 73-74. Accordingly, the ALJ erred in finding contradictions between plaintiff's complaints and self-reported activity.

The ALJ also refuted plaintiff's complaints with medical evidence. Tr. 49-54. However, the evidence cited by the ALJ only relates to plaintiff's allegations of physical disability, not mental. On appeal, plaintiff does not challenge the ALJ's decision with respect to physical limitations. With regard to plaintiff's mental limitations, the ALJ's analysis of plaintiff's symptom testimony is not supported by substantial evidence.

II.     *The ALJ's Rejection of Dr. Alvord's Opinion*

Plaintiff next contends the ALJ erred by not crediting Dr. Alvord's opinion. Pl.'s Br. 13-15. When the opinion of an examining physician is contradicted by other evidence in the record, the ALJ may only reject the opinion for "specific and legitimate" reasons supported by "substantial evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Here, the ALJ based her rejection of Dr. Alvord's opinion on: (1) inconsistencies in Dr. Alvord's report regarding plaintiff's memory; (2) Dr. Alvord's failure to

Page 5 - OPINION AND ORDER

"explain the basis of his opinion"; (3) the fact that Dr. Alvord's evaluation took place in 2014, eight years after the alleged onset of disability; (4) Dr. Alvord's reliance on plaintiff's subjective complaints; (5) Dr. Alvord's failure to provide functional limitations; (6) the fact that Dr. Alvord's evaluation was psychiatric in nature; and (7) plaintiff telling Dr. Alvord that he worked "crowd control" at the Mission. Tr. 53-54. After laying out Dr. Alvord's opinion, I address each of the ALJ's bases for rejecting it.

A.  *Dr. Alvord's Opinion*

Dr. Alvord's opinion was the result of a clinical interview, a mental status examination, review of limited medical records from 2011-2012, the Wechsler Adult Intelligence Scale and Memory Scale (both fourth edition), and a Trail Making Test. Tr. 652. Dr. Alvord's diagnostic impression included the following: that plaintiff suffers from a "Cognitive Disorder NOS" (*i.e.*, a cognitive disorder from a direct physiological cause); that his memory is "quite poor"; that he has issues with attention, concentration, and focus; that abstract thinking is impaired; that his "[m]edical issues prevent him from functioning at his previous capacity"; that he will "struggle to be retrained" and "concentrate/persist"; that he will struggle with "pace in an occupational setting requiring minimal cognitive capacities"; that he suffers from a "Major Depressive Disorder, recurrent, that may be secondary to the traumatic brain injury"; that he "meets the diagnostic criteria for an Anxiety Disorder NOS"; that PTSD should be ruled out; that his "adaptive functioning" is in the "moderate to severe range of impairment"; that cognitive issues are "chronic and unlikely to respond to treatment"; that "[m]ore intensive psychiatric care" is needed; and that he should be "monitored closely for increasing mood symptoms, especially in the domain of suicidal ideation." Tr. 657.

On Axis I (clinical disorders[1]), Dr. Alvord diagnosed Cognitive Disorder NOS, Major Depressive Disorder, and Anxiety Disorder NOS. Tr. 657. On Axis II (personality disorders and intellectual disabilities), Dr. Alvord's diagnosed Borderline Intellectual Functioning (below average

---

[1] Parenthetical explanations of terms in Dr. Alvord's diagnosis are from the American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders 25 (4th ed. 1994) ("DSM-IV").

Page 6 - OPINION AND ORDER

cognitive ability, *i.e.*, an IQ between 70-85). Tr. 657. On Axis III (general medical conditions), Dr. Alvord diagnosed a "history" of TBI (traumatic brain injury), and chronic neck and back pain based on Dr. Alvord's "deferr[al]" to plaintiff's medical records. Tr. 657. On Axis IV (psychosocial and environmental problems), Dr. Alvord determined that plaintiff's "psychosocial stressors" include: limited social interactions, financial strain, occupational limitations, and relationship stress. Tr. 657. Finally, on Axis V (global assessment of functioning, or "GAF"), Dr. Alvord assessed a score of "50" (placing plaintiff at the high-end of the middle of the scale, where the symptoms indicate antisocial behavior or an inability to keep a job[2]).

It was on the basis of the above impressions and diagnoses that Dr. Alvord concluded that plaintiff is "unable to perform independently, appropriately, effectively and on a sustained basis 7.5 hours per day, five days per week, in a regular, competitive work setting" 35-45% of the time. Tr. 662.

      B.    *The ALJ's Bases for Rejecting Dr. Alvord's Opinion*

First, the ALJ found internal inconsistencies in Dr. Alvord's report regarding plaintiff's memory. Tr. 53. Looking to the report, Dr. Alvord did indeed opine that "long term memory was somewhat impaired," but that "short term memory was intact," after testing and finding that plaintiff's "working memory" was in the sixth percentile for impairment, that his auditory was in the first, that his visual was in the fourth, that his immediate was in the second, and that his delayed was in the second. Tr. 656. It is difficult to reconcile Dr. Alvord's conclusions with his test findings. The inconsistency is a specific, legitimate reason to discredit Dr. Alvord's opinion regarding plaintiff's memory. But the contradiction is not a reason to reject all of Dr. Alvord's opinion.[3]

Second, the ALJ found that Dr. Alvord did not explain the basis of his opinions. But Dr. Alvord relied on a clinical interview of plaintiff, a review of some of plaintiff's medical records, and

---

[2] DSM-IV at 32.

[3] Moreover, the ALJ's limitation of plaintiff to "simple, routine, repetitive tasks" arguably addressed any memory problems. Tr. 49.

Page 7 - OPINION AND ORDER

the administration of psychological tests. Tr. 652, 657. Accordingly, Dr. Alvord's opinion should not have been discredited by the ALJ on this basis.

Another reason the ALJ concluded that Dr. Alvord should not be credited was that Dr. Alvord's examination took place in 2014, that is, eight years after plaintiff's amended onset of disability in 2006, and eleven years after plaintiff's initial alleged onset in 2003. Tr. 53. Ordinarily, an ALJ may afford "little weight" to medical opinions provided "well after" an injury or the expiration of a plaintiff's disability status. *Marci v. Chater*, 93 F.3d 540, 544-45 (9th Cir. 1996). However, the ALJ cannot cherry-pick the record. *Ghanim*, 763 F.3d at 1165. Here, the ALJ chose to discredit Dr. Alvord's opinion because his examination took place in 2014, but credited the opinions of State agency consultants in 2012. Tr. 52-53. The agency consultants did not review any mental health evaluations that post-dated Dr. Alvord's examination. Because the State agency consultations also took place after a significant time lapse (six years), and because the agents did not actually examine the plaintiff (whereas Dr. Alvord did), this is cherry-picking. Dr. Alvord's opinion should not have been discredited on this basis.

Next, the ALJ did not credit Dr. Alvord because the ALJ found he "largely based" his opinion on plaintiff's subjective complaints. Tr. 54. This is clearly not true; Dr. Alvord performed a comprehensive examination. Additionally, as explained, the ALJ erred in rejecting plaintiff's testimony regarding mental limitations. The ALJ therefore erred by rejecting Dr. Alvord's opinion for being based in part on plaintiff's subjective complaints.

Another reason the ALJ did not credit Dr. Alvord was that Dr. Alvord offered no "specific functional limitations." Tr. 54. That is not correct. Dr. Alvord completed a mental RFC form that offered many functional limitations, such as plaintiff's inability to carry out short, simple instructions ten percent of a workday, or plaintiff's inability to work in coordination with or proximity to others without being distracted by them fifteen percent of a workday. Tr. 658, 659. Defendant objected to the limitations Dr. Alvord provided in his mental RFC, calling them part of a "check-box form," and "of limited vocational relevance" because they "contained an assessment of the ability to

Page 8 - OPINION AND ORDER

perform tasks over the course of a 7.5 hour workday." Def.'s Br. 8-9. I find defendant's argument confusing. It is the ALJ's job to determine whether a disability claimant can perform tasks over the course of a full workday. Moreover, I am reviewing the ALJ's findings, not defendant's arguments. The ALJ erred in finding that Dr. Alvord's opinion should not be credited for failing to provide specific functional limitations.

The ALJ also denied Dr. Alvord's opinion because Dr. Alvord's evaluation was "psychiatric in nature." Tr. 54. I find no problem with Dr. Alvord performing a psychiatric evaluation of plaintiff because Dr. Alvord is a psychiatrist. Tr. 662. The ALJ should not have rejected Dr. Alvord's opinion because it was psychiatric in nature. Further, on appeal plaintiff only asks the Court to credit Dr. Alvord's conclusions regarding plaintiff's mental limitations.

Finally, the ALJ did not credit Dr. Alvord because supposedly plaintiff told him he worked "crowd control" at the Mission, which the ALJ determined "was not consistent with [Dr. Alvord's] opinion that claimant was unable to work." Tr. 54. Reviewing the records of Dr. Alvord's reports regarding plaintiff, I find that plaintiff at no time told Dr. Alvord that he did "crowd control" at the Mission.[4] Tr. 652-662. Rather, he described to Dr. Alvord the same sort of part-time work he testified to at the hearing. Tr. 654. Because the ability to do part-time work is not inconsistent with a finding of disability, this is not a valid basis for rejecting the opinion of Dr. Alvord.

Only one of the ALJ's reasons for discrediting Dr. Alvord's opinion stands up to review. The ALJ permissibly rejected Dr. Alvord's opinion about memory limitations, but otherwise erred in rejecting Dr. Alvord's opinion.

---

[4] There is a reference to "crowd control" elsewhere in the record, in notes from a December 6, 2012 visit with Andrea Marshall, D.O. Tr. 598. At the hearing, plaintiff testified that as part of his volunteer duties he "walk[ed] around the Mission and sat in chapel and made sure people behaved themselves." Tr. 74. As far as I can tell, the closest plaintiff came to telling Dr. Alvord he had done "crowd control" at the Mission was when Dr. Alvord reported plaintiff "is triggered to anxiety from crowds 'and loud noises.'" Tr. 654.

Page 9 - OPINION AND ORDER

III.   *Credit-as-True*

In the interests of fairness and expediency, and at plaintiff's request, I apply the credit-as-true doctrine to plaintiff's case. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). The first step under this doctrine is to determine whether the ALJ made a legal error. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). The second step is to review the "record as a whole" to see "whether it is fully developed, is free from conflicts and ambiguities, and 'all essential factual issues have been resolved.'" *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014)). Finally, the Court must determine whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.*

An ALJ commits a legal error whenever she or he fails to provide legally sufficient evidence for rejecting claimant testimony or medical opinion. *Id.* The ALJ failed to provide legally sufficient evidence for rejecting plaintiff's testimony and Dr. Alvord's opinion regarding plaintiff's mental limitations. This is a legal error.

I have reviewed the record as a whole and find it is fully developed. Plaintiff is not getting any younger or closer in time to his alleged onset of disability. Accordingly, Dr. Alvord's thorough examination is the best we are going to get regarding plaintiff's mental limitations during the period of disability, and there is no purpose to further proceedings.

Dr. Alvord concluded on the basis of his opinion that plaintiff would be unable to work independently, appropriately, and on a sustained basis, 7.5 hours per day, five days per week, in a regular, competitive work setting, 35-45% of the time. Tr. 662. Had Dr. Alvord's opinion regarding plaintiff's mental limitations been credited as true, it would have eliminated all other employment. This is true according to the VE himself, who responded to plaintiff's attorney's positing of Dr. Alvord's conclusion by saying that they "would exclude all jobs I identified and *all other work*, Your Honor." Tr. 85 (emphasis added). Crediting Dr. Alvord's opinion as true, the ALJ would be required to find plaintiff disabled.

## CONCLUSION

The decision of the Commissioner is REVERSED and REMANDED for an immediate payment of benefits.

IT IS SO ORDERED.

Dated this 27 day of February 2017.

_____
Ann Aiken
United States District Judge